UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

CAROL S. WILLIAMS

VERSUS

WAL-MART LOUISIANA, LLC

CIVIL ACTION

NO. 16-00191-BAJ-EWD

**REPORT AND RECOMMENDATION**

Before the court is Plaintiff's Motion to Remand.[1]  The Motion is opposed by Wal-Mart Louisiana, LLC ("Wal-Mart").[2]  Plaintiff has filed a reply.[3]  Following submission of the parties' initial briefing, the court *sua sponte* requested additional briefing and supporting documentation addressing the amount in controversy.[4]  Although the court finds that Plaintiff's Motion to Remand[5] based on the timeliness of Wal-Mart's removal is unfounded, the undersigned recommends that this matter be **REMANDED** because Wal-Mart has not established that the amount in controversy met the jurisdictional threshold at the time of removal.[6]

**I.     Background**

On or about June 30, 2015, Carol S. Williams ("Plaintiff") was allegedly injured while walking through the automatic doors of a Wal-Mart store located at 9350 Cortana Place, Baton Rouge, Louisiana, 70815.[7]  Williams alleges that she entered the doors closest to the general

---

[1] R. Doc. 6.

[2] R. Doc. 7.

[3] R. Doc. 11.

[4] R. Doc. 22 & R. Doc. 30.

[5] R. Doc. 6.

[6] Because the amount in controversy is jurisdictional, this court may consider the matter *sua sponte*.  *See*, *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281 (5th Cir. 2007).

[7] R. Doc. 1-2, ¶¶ 3-5.

merchandise side of the store and upon taking a few steps, slipped in water on the floor and fell to the ground.[8]

On July 6, 2015, Williams filed this lawsuit against Wal-Mart in state court.[9] In her state court Petition, Williams asserted that:

> to the extent that defendant would attempt to file a notice of removal in federal court, petitioner shows federal court [sic] lacks jurisdiction over this matter, as the current amount in dispute does not exceed $75,000. In support, plaintiff shows that her medical bills to date are less than $1,000. This is not a stipulation as to damages, but rather an allegation as to the amount in controversy at the time of this filing.[10]

On March 23, 2016, Wal-Mart filed a Notice of Removal asserting jurisdiction pursuant to 28 U.S.C. § 1332.[11] Wal-Mart's removal is based on a February 24, 2016 progress note from Dr. Anthony Ioppolo (the "Ioppolo Note") which was received by Defendant on or about March 21, 2016.[12] The Ioppolo Note indicates that "plaintiff's lumbar MRI scan showed herniations at L4 and L5, along with facet arthropathy, and that [Dr. Ioppolo] planned to refer [plaintiff] for transforaminal epidural injections at the L4 and L5 levels."[13] Defendant asserts that based on the Ioppolo Note, it now appears that the amount in controversy in this matter exceeds $75,000.00.[14] Wal-Mart further contends the Ioppolo Note was the first time that Plaintiff's records indicated disc herniations or recommended epidural injections.[15]

---

[8] R. Doc. 1-2, ¶ 5.

[9] R. Doc. 1 at 1. *Carol S. Williams v. Wal-Mart Louisiana, LLC*, No. 640584, 19th Judicial District Court for the Parish of East Baton Rouge, State of Louisiana.

[10] R. Doc. 1-2 at ¶ 10.

[11] R. Doc. 1.

[12] R. Doc. 1, ¶ 7. In its Notice of Removal, Wal-Mart incorrectly refers to the Ioppolo Note as dated February 2, 2016.

[13] R. Doc. 1, ¶ 7.

[14] R. Doc. 1, ¶ 7.

[15] R. Doc. 7, p. 1. R. Doc. 7, p. 3.

2

On April 5, 2016, Plaintiff filed the instant Motion to Remand.[16] Plaintiff "does not dispute that this Court has removal jurisdiction" and agrees with Wal-Mart that the parties are completely diverse and that the requisite amount in controversy is met.[17] However, she argues that Wal-Mart's removal was untimely under 28 U.S.C. § 1446(b)(3) because it was not within 30 days after Wal-Mart's receipt of an "other paper from which it may first be ascertained that the case is one which is or has become removable."[18] Specifically, Plaintiff argues that "[w]hile this case was not removable when Williams filed suit on July 6, 2015," it became removable when Wal-Mart received medical records from Total Care Injury & Pain Center ("TCIP"), compiled by TCIP on December 14, 2015 and mailed to Wal-Mart on February 11, 2016 (the "TCIP Records").[19] Plaintiff asserts that the TCIP Records included the results of lumbar and cervical MRIs indicating concentric disc bulges and that these records should have put Wal-Mart on notice that the suit had become removable.[20] Reasoning that Wal-Mart received the TCIP Records more than 30 days before its March 23, 2016 removal, Plaintiff argues that the removal was untimely and that this suit should be remanded.[21]

---

[16] R. Doc. 6.

[17] R. Doc. 6-1, p. 3. In its notice of removal, Wal-Mart alleges that it is a Delaware limited liability company and that its sole member is Wal-Mart Stores East, LP, a Delaware limited partnership composed of two members, WSE Management, LLC and WSE Investment, LLC. R. Doc. 1, ¶ 8. Wal-Mart further contends that the sole member of WSE Management, LLC and WSE Investment, LLC is Wal-Mart Stores East, LLC. *Id*. "The sole member of Wal-Mart Stores East, LLC is its parent company Wal-Mart Stores, Inc., a Delaware corporation with its principal place of business in Bentonville, Arkansas." *Id*. Plaintiff alleges that she is a resident and domiciliary of Louisiana. R. Doc. 1-2.

[18] R. Doc. 6-1, p. 3.

[19] R. Doc. 6-1, p. 4.

[20] R. Doc. 6-1, p. 3.

[21] Plaintiff "admits that it does not have evidence of the actual date Wal-Mart received" the TCIP Records but contends that it is "more likely than not that Wal-Mart received this 'other paper' before February 23, 2016." R. Doc. 6-1, p. 4. Wal-Mart does not state in its opposition when it received the TCIP Records. Plaintiff asserts that she mailed the TCIP Records on February 11, 2016. The court agrees with Plaintiff that it is more likely than not that Wal-Mart received the TCIP Records more than 30 days before it filed its Notice of Removal. However, because this court finds that the TCIP Records do not constitute an "other paper" triggering the 30 day removal period, it is not necessary to determine the date on which Wal-Mart received the TCIP Records.

3

## II. Applicable Law and Analysis

### A. Timeliness of Wal-Mart's Removal

A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."[22] When original jurisdiction is based on diversity of citizenship, the cause of action must be between "citizens of different States" and the amount in controversy must exceed the "sum or value of $75,000, exclusive of interests and costs."[23] Subject matter jurisdiction must exist at the time of removal to federal court. *St. Paul Reinsurance Co., Ltd. v. Greenburg*, 134 F.3d 1250, 1253 (5th Cir. 1998).

The time limits for filing a notice of removal, as set forth in 28 U.S.C. § 1446, are as follows:

> (1) The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.
> …
> (3) Except as provided in subsection (c), **if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable**.

(Emphasis added).

"[T]he Fifth Circuit has provided a bright line rule that 'the thirty-day removal period under the first paragraph is triggered only where the initial pleading '*affirmatively reveals on its face* that the plaintiff is seeking damages in excess of the minimum jurisdictional amount of the federal

---

[22] 28 U.S.C. § 1441(a).

[23] 28 U.S.C. § 1332(a)-(a)(1).

4

court.'"" *Scott v. Office Depot, Inc.*, 2015 WL 2137458, at *4 (M.D. La. May 7, 2015) (quoting *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 399 (5th Cir. 2013) (quoting *Chapman v. Powermatic, Inc.*, 969 F.2d 160, 163 (5th Cir. 1992) (emphasis added by *Mumfrey*)). Here, it is undisputed that the initial pleading in this suit did not trigger the 30 day removal period. Indeed, Plaintiff's Petition included an affirmative statement that the amount in dispute *did not* meet the jurisdictional threshold.

With regard to triggering the 30 day time period from the Defendant's receipt "of an amended pleading, motion, order, or other paper," as provided in § 1446(b)(3), the removal period is triggered only where jurisdiction is "unequivocally clear and certain" from the document. *Bosky v. Kroger Texas, LP*, 288 F.3d 208, 211 (5th Cir. 2002). A discovery response "may constitute an 'other paper' under the federal removal statute, notifying defendant of an action's removability and triggering the 30-day removability period." *Robinson v. Kmart Corp.*, 2011 WL 2790192 at *2 (M.D. La. April 28, 2011). "To qualify as an 'other paper,' however, the discovery response must be 'unequivocally clear and certain,' so that defendant may ascertain the action's removability." *Id*. Significantly, "[o]ther papers describing injuries and other damages that seem likely to exceed the amount in controversy requirement, but not showing unequivocally that the requirement is met, are insufficient to trigger the removal clock." *Green v. Geico General Ins. Co.*, 2015 WL 5971760, at *3 (E.D. La. Oct. 14, 2015).

The issue presented in Plaintiff's Motion to Remand is whether the 30 day period for removal was triggered by Wal-Mart's receipt of the TCIP Records, thereby making Wal-Mart's March 23, 2016 removal untimely and requiring remand. *Bassett v. Wal-Mart Louisiana, LLC*, 2010 WL 502735, at * 2 (W.D. La. Feb. 8, 2010) (noting that, if substantiated, plaintiff's allegation that defendant did not remove within thirty days from receipt of papers from which it was

5

ascertainable that the action was removable "would constitute a procedural defect in the removal process, compelling remand.") (citing *In re Shell Oil Co.*, 932 F.2d 1518, 1522 (5th Cir. 1991)). Accordingly, the deciding factor in determining the timeliness of Wal-Mart's removal is whether it was "unequivocally clear and certain" based on the TCIP Records that the amount in controversy exceeded $75,000.00 such that Wal-Mart should have ascertained that the case was removable.

When Plaintiff originally filed her Petition on July 6, 2015, she alleged that her medical bills to date were less than $1,000.00.[24] Although not a stipulation as to her damages, Plaintiff also asserted in her Petition that "the current amount in dispute does not exceed $75,000" and therefore federal jurisdiction was lacking.[25] By interrogatories dated October 12, 2015, Plaintiff stated that she suffered from "lower back pain," "pain in back of head," "headaches," and "neck pain,"[26] and identified her health care providers as TCIP and Women's Hospital.[27] Additionally, she attached a TCIP statement for services July 7, 2015 through September 30, 2015.[28] The statement from TCIP listed 10 active diagnoses,[29] and reflected a balance of $4,335.00 for services rendered.[30] On February 11, 2016, Williams supplemented her previous discovery responses by mailing the TCIP Records for services from July 7, 2015 through December 1, 2015.[31] The TCIP

---

[24] R. Doc. 1-2, ¶ 10.

[25] R. Doc. 1-2, ¶ 10.

[26] R. Doc. 6-2 at 2.

[27] R. Doc. 6-2, p. 3.

[28] R. Doc. 6-2.

[29] These diagnoses included: Cervical segmental dysfunction, cervicalgia, deep and superficial muscle spasms, lumbosacral segmental dysfunction, low back pain, thoracic segmental dysfunction, post traumatic headache, thoracalgia, pain in limb, thoracic myalgia.

[30] R. Doc 6-2 at 4-5.

[31] R. Doc. 6-5.

6

Records include reports of imaging identifying concentric bulges at L4 to L5, L5 to S1, C3 to C4, C4 to C5, and C5 to C6.[32]

In support of its argument that the TCIP Records mailed on February 11, 2016 were sufficient to inform Wal-Mart that the case was removable, Plaintiff cites various cases in which courts awarded general damages greater than $75,000.00 for injuries described as "bulging discs." These cases, however, are distinguishable from the case at issue because in each case the plaintiff either claimed some other serious injury or condition in addition to bulging discs, or there was the potential for surgery.[33] More importantly, Wal-Mart's purported ability to infer removability based on these documents is not sufficient to trigger the 30 day removal period under Fifth Circuit precedent. *See*, *Bosky v. Kroger Texas, LP*, 288 F.3d 208, 210 (5th Cir. 2002) (explaining that the Fifth Circuit has "rejected a due diligence requirement for determining whether a case is

---

[32] R. Doc. 6-5.

[33] In *Peoples v. Fred's Stores of Tenn.*, 38 So. 3d 1209, 1211 (La. App. 3 Cir. 2010), the plaintiff suffered from other injuries including mild stenosis and herniated nucleus pulposus and at least one doctor recommended plaintiff undergo an anterior cervical decompression, discectomy, and fusion if she was having enough pain. In *Case v. Shelter Ins. Co.*, 48 So. 3d 1196, 1202 (La. App. 3. Cir. 2010), the court held that "an active herniation of a disk with surgical intervention warrants a general damage award of $100,000.00." Although the *Case* court noted that "a simple bulging disk and aggravation of an asymptomatic spondylosis can be awarded a minimum of $75,000.00 in general damages," it relied on a case in which plaintiff was in continuous pain for two-and-a-half years and plaintiff's treating physician indicated surgery would be required to alleviate plaintiff's pain. *See*, *Este v. State Farm Ins. Co.*, 676 So. 2d 850, 858 (La. App. 3 Cir. 1996). In *Pannell v. Encompass Ins. Co.*, 956 So. 2d 152 (La. App. 3 Cir. 2007), the court awarded $90,000.00 as the "highest reasonable award" for plaintiff's neck and shoulder injuries and aggravation of a pre-existing low back injury but relied on jurisprudence awarding between $15,000.00 to, at most, $70,000.00 for presumably similar injuries. In *Locke v. Young*, 973 So. 2d 831, 835 (La. App. 2 Cir. 2007), the doctor testified that there was a "distant probability" of surgery and the court found that "the highest amount the trial court could have awarded" was $75,000.00. In *James v. Home Depot USA, Inc.*, 2002 WL 1453824, at *2 (E.D. La. July 3, 2002), the court denied plaintiff's motion to remand based on claimed injuries of "'physical, emotional and mental pain and anguish', disability, past loss of wages and future loss of wages" and noted that defendant submitted an affidavit explaining that its decision to remove was based, in part, "on telephone conversations with Plaintiff's attorney who indicated that as a result of the incident, the Plaintiff may require knee surgery in the future and has missed work since November." In *Hoyt v. Gray Ins. Co.*, 809 So. 2d 1076, 1084 (La. App. 4 Cir. 2002), the court affirmed general damage awards of $150,000.00 and $100,000.00 and noted that plaintiffs sustained "disabling injuries, having long-range implications." In *Smith v. Goetzman*, 720 So. 2d 39, 48 (La. App. 1 Cir. 1998), plaintiff suffered from clinical depression in addition to disc protrusion/disc bulges and was awarded $80,000.00 in general damages. In *Keller v. City of Plaquemine*, 700 So. 2d 1285, 1292 (La. App. 1 Cir. 1997), surgery was impossible because of the plaintiff's other medical problems and the trial court's award of $125,000.00 in general damages was not appealed. The court finds each of these cases presented more significant injuries or broader damage claims than alleged here.

removable."); *Green v. Geico General Ins. Co.*, 2015 WL 5971760, at *5 (E.D. La. Oct. 14, 2015) ("GEICO may have inferred from these documents that the amount in controversy requirement was satisfied. However, under Fifth Circuit precedent, the defendant's ability to infer removability is not sufficient."); *Scott v. Office Depot, Inc.*, 2015 WL 2137458, at *5 (M.D. La. May 7, 2015) (finding removal period not triggered by plaintiff's discovery responses because "[d]efendants would be required to speculate or conduct their own additional investigation, as highlighted by the competing 'quantum' cases submitted by both parties, to determine whether the amount in controversy requirement was satisfied based upon characterizations of Ms. Scott's injuries by her doctor and the amount of steroid injections she received. Removing defendants, however, are not held to a due diligence standard.")

Finally, Plaintiff's assertion in her Petition that the amount in dispute "does not exceed $75,000," as well as her initial discovery responses showing conservative treatment and relatively low medical bills, support a finding that it was reasonable for Wal-Mart to believe this case **not** to be removable based on the TCIP Records. In light of Plaintiff's Petition and early discovery responses, the court finds that it was not "unequivocally clear and certain" based on the TCIP Records that the amount in controversy met the jurisdictional threshold such that the 30 day time period for removal was triggered by receipt of those records. *See*, *Bassett v. Wal-Mart Louisiana, LLC*, 2010 WL 502735, at *3, n. 11 (W.D. La. Feb. 8, 2010) (rejecting plaintiff's argument that her discovery responses triggered removal period because such responses did not contain specific damage estimates and noting that "from defendants' perspective, any suspicion that the amount in controversy might exceed the jurisdictional minimum was muted by plaintiff's unchanged allegation that her damages should not exceed $75,000.00."). Accordingly, Wal-Mart's failure to

8

file its Notice of Removal within 30 days of receipt of the TCIP Records is not a procedural defect necessitating remand.

### B. Amount in Controversy

The parties agree that there is complete diversity[34] and that the amount in controversy is satisfied.[35] "The parties, however, may neither consent to nor waive federal subject matter jurisdiction, so the court must ensure that the amount in controversy is satisfied." *Robinson v. Kmart Corp.*, 2011 WL 2790192, at * 4 (E.D. La. April 28, 2011) (citing *Simon v. Wal-Mart Stores, Inc.*, 193 F.3d 848 (5th Cir. 1999)). *See also*, *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281 (5th Cir. 2007) ("We may consider subject matter *sua sponte*, as 'subject-matter delineations must be policed by the courts on their own initiative.'"). The removal statute, 28 U.S.C. § 1441, is strictly construed and any doubt as to the propriety of removal should be resolved in favor of remand. *Gasch*, 491 F.3d at 281-282. A removing defendant "is always required to 'prove by a preponderance of the evidence that the amount in controversy exceeds $75,000.'" *Bosky v. Kroger Texas, LP*, 288 F.3d 208, 210 (5th Cir. 2002) (quoting *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir.1999)). *See also*, *Garcia v. Koch Oil Co. of Texas, Inc.*, 351 F.3d 636, 638 (5th Cir. 2003). "A showing only that the damages 'could well exceed' the jurisdictional amount or that there is 'some possibility' that the plaintiff 'could recover more' than the jurisdictional amount is insufficient to carry the removing defendant's burden." *Flitter v. Walmart Stores, Inc.*, 2009 WL 2136271, at *3 (citing *Allen v. R and H Oil & Gas Co.*, 63 F. 3d 1326, 1336 and *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1411–12 (5th Cir. 1995)).

---

[34] R. Doc. 1 at 3-4; R. Doc. 6-1 at 4.

[35] R. Doc. 1 at 2-3; R. Doc. 6-1 at 3.

9

A removing defendant may meet this burden by either: (1) demonstrating that it is facially apparent that the claims likely exceed $75,000; or (2) setting forth facts in controversy that support a finding that the jurisdictional minimum is met. *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999). Based on Plaintiff's affirmative statement in her Petition that her damages did not at that time exceed $75,000.00 and that her medical bills were less than $1,000.00, the court finds that it was not facially apparent from Plaintiff's Petition that her claims likely exceed the jurisdictional threshold. Because the amount in controversy is not facially apparent, the court will consider whether the parties have submitted facts in controversy supporting a finding of the jurisdictional minimum.

Here, the TCIP Records include reports of imaging identifying concentric bulges at L4 to L5, L5 to S1, C3 to C4, C4 to C5, and C5 to C6.[36] The Ioppolo Note indicates that "plaintiff's lumbar MRI scan showed herniations at L4 and L5, along with facet arthropathy, and that [Dr. Ioppolo] planned to refer [plaintiff] for transforaminal epidural injections at the L4 and L5 levels."[37] The parties' joint memorandum indicates that Plaintiff underwent "transforaminal epidural injections at two levels on May 26, 2016;"[38] however, there is no evidence regarding the cost of that procedure, or indication that Plaintiff will undergo additional injections. There is no indication that surgery is recommended (or was even considered). Charges for Plaintiff's treatment with TCIP apparently totaled close to $7,000.00, and it appears she was released from TCIP on December 1, 2015.[39] There is no indication of costs associated with examination by Dr.

---

[36] R. Doc. 6-5.

[37] R. Doc. 1, ¶ 7.

[38] R. Doc. 30, p. 6.

[39] Plaintiff filed her Petition on July 6, 2015 and alleged her medical bills to date were less than $1,000.00. R. Doc. 1-2, ¶ 10. A final bill for TCIP services rendered July 7, 2015 through December 1, 2015 totals $6,059.25. R. Doc. 11-1. It appears that Plaintiff was released from TCIP on December 1, 2015. R. Doc. 11-3. Plaintiff relies on *Baudoin v. Opie*, 685 So. 2d 553 (La. App. 3 Cir. 1996) with respect to her future medicals. There, plaintiff was awarded $25,000.00 for pain and suffering, $5,000.00 for disability, and $15,000.00 for future conservative treatment of a soft

Ioppolo. In her Petition, Plaintiff does not specifically assert claims for pain and suffering or mental anguish, lost wages or lost earning capacity, or disability. Finally, while this court raised the issue of whether the amount in controversy was met and ordered the parties to file a memorandum concerning that issue "and submit therewith all supporting documentation,"[40] no additional documentation was provided.

In *McCain v. Winn-Dixie Montgomery*, 2016 WL 2908418 (E.D. La. May 19, 2016), the Eastern District of Louisiana granted a motion to remand where plaintiff alleged multiple cervical disc bulges, exacerbation of preexisting lumbar disc herniations and produced $6,384.00 in known medical bills. There, the court noted that "this Court has repeatedly held that unoperated herniated discs do not meet the jurisdictional minimum." *Id*. at * 4. Similarly, in *Loftin v. Hughes*, 2014 WL 3893313 (E.D. La. Aug. 7, 2014), the court remanded plaintiffs' suit where each plaintiffs' medical expenses to date were under $7,000.00. There, while one of the plaintiff's doctor indicated plaintiff might be "a candidate for 'facet blocks in both cervical and lumbar spine,'" and the record included "three of the Plaintiffs' medical diagnose [sic] and recommendations for future treatment," there was no information regarding the anticipated costs of treatment and defendants provided "no information regarding the likelihood that any Plaintiff will undergo these possible procedures." *Id*. at * 4. Although one of the plaintiffs also alleged lost income as a result of the accident, the record did not indicate how much time plaintiff had lost or her hourly wage. *Id*. at *3. Ultimately, while the multiple categories of damages alleged by plaintiffs "could potentially bring the amount in controversy over $75,000 per plaintiff," the court held that the removing

---

tissue injury. Again, while the parties' joint memorandum indicates that Plaintiff underwent epidural injections on May 26, 2016, there is no indication that future injections have been recommended. Given the minimal treatment noted in Plaintiff's medical records, the court cannot find that Wal-Mart has sustained its burden of establishing that the amount in controversy is satisfied even when some minimal amount is included for future medical treatment.

[40] R. Doc. 22.

defendants failed to show damages "would more likely than not meet the jurisdictional threshold." *Id*. at * 4.

This court's research indicates that the Eastern District has consistently held that where a plaintiff presents medical bills similar to those presented by Plaintiff here, in addition to claims for general damages arising out of un-operated bulging and/or herniated discs, the jurisdictional threshold is not met. *See*, *Gonzalez v. Granter*, 2016 WL 3268165 (E.D. La. June 15, 2016) (remanding suit arising out of motor vehicle accident where plaintiff sought damages for past, present, and future pain and suffering; medical expenses; property damage and rental expenses; lost earnings and lost earning capacity; permanent disability; loss of enjoyment of life; and loss of consortium as well as penalties and double damages against insurer defendant because removing defendant presented no evidence of plaintiff's condition, prognosis, or treatment options other than an MRI report, court had no evidence regarding plaintiff's wage loss or property damage claims, and medical bills submitted totaled only $4,722.00); *Arnold v. Lowe's Home Centers, Inc.*, 2011 WL 976512 (E.D. La. March 16, 2011) (remanding suit where medical records indicated approximately $12,000 in medical expenses incurred primarily related to a herniated disc for which epidural steroid injections were prescribed but no record indicated plaintiff had undergone surgery or had been recommended for surgery). *See also*, *Guzman v. State Farm Mut. Auto. Ins. Co.*, 2008 WL 2308099, at *2 (E.D. La. June 2, 2008) (finding that plaintiff's argument that his MRI revealed three herniations and he consulted with a neurosurgeon who ordered additional diagnostic tests, discussed the possibility of surgery and ordered an epidural steroid injection was not sufficient to support court's subject matter jurisdiction); *Keller v. Sally Beauty Supply*, 2005 WL 757354, at *1 (E.D. La. March 29, 2005) (finding that the defendant had not shown that the amount in controversy exceeded $75,000.00 where a post-accident MRI revealed herniated discs at C5 to C6

and C6 to C7 and where defendant offered no medical support for its contention that the plaintiff was scheduled to undergo shoulder surgery as a result of the fall).

The court recognizes that this district recently found the potential award of general damages for an un-operated herniated disc could support a finding that the amount in controversy is satisfied. *See*, *Thomas v. Louis Dreyfus Commodities, LLC*, 2016 WL 1317937 (M.D. La. March 11, 2016). There, however, plaintiff submitted medical bills totaling $26,637.57 and, in addition to herniated and bulging discs, alleged loss of consciousness, "concussion and/or head injury," and a "left arm/hand injury" and sought recovery for emotional distress, lost wages, loss of enjoyment of life, loss of earning capacity and future wages. The court finds *Thomas* distinguishable based on the larger amount of medical expenses established, the additional injuries alleged, and the scope of damages sought.[41] Further, while the parties include additional cases in their joint memorandum in which courts have awarded greater than $75,000.00 in general damages for herniated discs, such cases are again distinguishable because they involved multiple procedures (and future procedures), likely surgery, or findings of disability.[42] *See also*, *Robinson v. Kmart Corp.*, 2011 WL 2790192

---

[41] In *Thomas*, this court noted that "the potential award of general damages where herniated discs are alleged and the plaintiff has not undergone surgery is significant, and courts have found the amount in controversy satisfied where such allegations are made." 2016 WL 1317937 at * 4. In support of that statement, this court cited *Reeves v. TPI Restaurants, Inc.*, 2007 WL 1308380 (W.D. La. April 13, 2007) and *McDonald v. Target Corp. of Minn.*, 2011 WL 2160495 (E.D. La. June 1, 2001). The *Reeves* court relied on *Fruge v. Hebert Oilfield Constr., Inc.*, 856 So. 2d 100 (La. App. 3 Cir. 2003) and *Hoyt v. Grey Ins. Co.*, 809 So. 2d 1076 (La. App. 4 Cir. 2002) for its finding that the jurisdictional minimum was satisfied solely based on medical records showing herniated discs in plaintiff's neck and back. However, in *Fruge*, the lower court's $100,000.00 general damage award for plaintiff's herniated disc was not appealed and plaintiff's treating doctor believed surgery would be more likely in the future due to the injury. 856 So. 2d at 102. In *Hoyt*, the plaintiff was found to have "disabling injuries" with "long-range complications." 809 So. 2d at 1084. Similarly, the *McDonald* court noted that "Louisiana jurisprudence indicates that…injuries of herniated cervical disc and cervical spinal stenosis have generated awards greater than $75,000 even without surgery." 2011 WL 2160495 at *1 (citing *Rico v. Sewerage and Water Bd. of New Orleans*, 929 So. 2d 143 (La. App. 4 Cir.2006) (granting $150,000.00 when back surgery was recommended but not performed); *Piazza v. Behrman Chiropractic Clinic, Inc.*, 601 So. 2d 1378 (La. 1982) ($111,600.00 for mental and physical pain and suffering, medical expenses, disability, past and future, and loss of consortium for herniated disc); and *Fontenot v. Laperouse*, 774 So. 2d 278 (La. App. 3 Cir.2000) ($120,000.00 for herniated and bulging disc where fragment of herniated disc protruded into nerve canal). In light of the cases relied upon by the *Reeves* and *McDonald* courts, this court cannot find that the amount in controversy here likely exceeds $75,000.00 based on the medical records presented.

[42] In *Donaldson v. Hudson Ins. Co.*, 116 So. 3d 46, 52 (La. App. 4 Cir. 2013), the court affirmed a $125,000.00 general damage award where plaintiff "will likely have to undergo a surgery procedure to find more permanent relief from his

13

(M.D. La. April 28, 2011) (recommending that plaintiff's motion to remand be denied where the record revealed "that plaintiff suffered *multiple* herniated discs, that may require surgery in the future, cervical strain, cervical spondylosis, shoulder strain, and injuries to her head, shoulder, arm" and also asserted claims for lost wages, medical expenses, mental anguish, and possible disability.); *Scott v. Office Depot*, 2015 WL 2137458 (M.D. La. May 7, 2015) (recommending the court retain jurisdiction based on removal triggered by settlement demand letter setting out medical expenses of $21,315.49 to date in addition to $130,000.00 to $390,000.00 for future medical expenses for the next five to ten years for, *inter alia*, two to three epidural injections per year to treat multiple disc bulges and herniations).

Significantly, it is Wal-Mart's burden to "'prove by a preponderance of the evidence that the amount in controversy exceeds $75,000.'" *Bosky v. Kroger Texas, LP*, 288 F.3d 208, 210 (5th Cir. 2002) (quoting *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir.1999)). Based on the documentation presented here, the court finds that Plaintiff's claims are more similar to those presented in *McCain v. Winn-Dixie Montgomery*, 2016 WL 2908418 (E.D. La. May 19, 2016), *Arnold v. Lowe's Home Centers, Inc.*, 2011 WL 976512 (E.D. La. March 16, 2011), and *Guzman*

---

pain." In *Buckheister v. United States Environmental Services, LLC*, 97 So. 3d 414 (La. App. 5 Cir. 2012), plaintiff was awarded $175,000.00 in general damages and for loss of enjoyment of life where he suffered three disc herniations, underwent multiple epidural and facet joint injections, several rhizotomies, was hospitalized due to severe pain, and his condition would require additional future procedures. In *Guidry v. Allstate Ins. Co.*, 83 So. 3d 91 (La. App. 3 Cir. 2011), a total of $155,000.00 in general damages was awarded where plaintiff would "face a lifetime of pain management," had at least two disc herniations and established some disability and depression. In *Alexander v. Tate*, 30 So. 3d 1122 (La. App. 3 Cir. 2010), the court affirmed a general damage award of $192,000.00 for bodily injury, past and future physical and mental pain and suffering, mental anguish, and disability where plaintiff suffered two herniations, bulging discs, and spur formation, had undergone multiple steroid injections over a period of time, and had a 10-12% permanent impairment rating. In *Beard v. Coregis Ins. Co.*, 968 So. 2d 278 (La. App. 3 Cir. 2007), the court awarded $165,000.00 in general damages where plaintiff suffered from multiple herniated discs and was "totally and permanently disabled" but due to a pre-existing heart condition was "a poor surgical risk." In *Duchamp v. State Farm Mut. Auto. Ins.*, 916 So. 2d 498 (La. App. 3 Cir. 2005), a plaintiff who suffered from herniated disc, facial numbness/drooping, and loss of libido and underwent a series of three injections, with anticipated future injections once or twice a year throughout his lifetime was awarded $135,000.00 in general damages. In *Day v. Ouachita Parish School Board*, 823 So. 2d 1039 (La. App. 2 Cir. 2002), a high school student athlete was awarded $195,000.00 for pain and suffering and $50,000.00 for loss of enjoyment of life following a herniated disc where plaintiff would more likely than not need lumbar surgery.

*v. State Farm Mut. Auto. Ins. Co.*, 2008 WL 2308099, at *2 (E.D. La. June 2, 2008), discussed above. *See also*, *Hebert v. Hanco Nat. Ins. Co.*, 2009 WL 255948, at *5 (M.D. La. Feb. 3, 2009) ("evidence that the plaintiff suffers from a herniated disc, without any recommendation for surgery, does not satisfy defendants' burden of proving that the amount in controversy exceeded $75,000 at the time of removal. This is so especially in light of the fact that plaintiff continues to work, continues to engage in activities of daily living, and does not seek damages for mental anguish."). Plaintiff has presented no claim for lost wages or mental anguish, and has not asserted any level of disability. There is no indication that Plaintiff will be recommended for surgery or even that future epidural injections will occur. There is no evidence regarding the cost of the May 26, 2016 injections or Dr. Ioppolo's services and the medical records submitted for TCIP services only total close to $7,000.00. This court previously requested additional documentation when it expressed concern about the amount in controversy,[43] and no additional documentation was submitted. The court "is mindful that removal jurisdiction is strictly construed" and that "[w]hen subject matter jurisdiction is doubtful, remand is appropriate." *Anderson v. Great West Cas. Co.*, 2010 WL 420572, at *2 (E.D. La. Jan. 29, 2010) (internal citations omitted). Here, the court finds that Wal-Mart has not sustained its burden of proving by a preponderance of the evidence that the amount in controversy exceeds $75,000.00, despite the court's request for additional briefing and supporting documentation. In light of the Fifth Circuit's instruction that "doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction," the court recommends that this suit be remanded. *See*, *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000).

---

[43] R. Doc. 22.

### III. Conclusion

Although the court finds that Plaintiff's Motion to Remand[44] based on the timeliness of Wal-Mart's removal is unfounded, the undersigned recommends that this case be **REMANDED** because Wal-Mart has not established that the amount in controversy met the jurisdictional threshold at the time of removal.

### RECOMMENDATION

It is the recommendation of the magistrate judge that this case be **REMANDED**.[45]

Signed in Baton Rouge, Louisiana, on August 16, 2016.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[44] R. Doc. 6.

[45] Remand of this case will result in termination of Plaintiff's Motion to Remand. R. Doc. 6. For the reasons set forth herein, the court finds that Plaintiff's Motion to Remand based on the timeliness of Wal-Mart's removal should not be granted. Nevertheless, because the court finds that the jurisdictional threshold was not met at the time of removal, the court recommends that the district court remand this matter to state court.